Statement of Facts.

in point of fact done so, nor has it attempted to do so. The answer to this is, that its right to rebuild was denied by the plaintiff, and such denial promptly followed by a suit. The company could not be required to pay and rebuild also.

Our conclusion is that the option to rebuild was exercised in time, and that this suit cannot be sustained.

Judgment reversed.

—————•—————

## J. E. WATT ET AL. v. F. C. DININNY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 26, 1891—Decided March 9, 1891.

(*a*) Plaintiffs, owners of coal land, executed a mining lease perpetual till exhaustion, the lessees to pay thirty cents per ton royalty on coal mined. Subsequently, the plaintiffs, the lessees, and the defendants, made a parol agreement by which defendants were to enter and mine coal, and to pay the plaintiffs the same royalty:

1. The defendants, as found from the evidence, having mined coal from the lands of the plaintiffs, under the agreement made therefor with the consent of the lessees, they were liable for the royalty they had agreed to pay; and the plaintiffs were entitled to bring suit to recover the same, directly against the defendants.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 289 January Term 1891, Sup. Ct.; court below, No. 398 June Term 1886, C. P.

On May 27, 1886, J. Edwin Watt, W. W. Watt and Daniel Scurry brought assumpsit against F. C. Dininny and N. Cowan, partners, trading as Dininny & Cowan. Plea, non-assumpsit.

On July 11, 1888, by agreement in open court the cause was referred to *Mr. Henry A. Knapp*, as referee, under the act of April 6, 1869, P. L. 725, and its supplements. After the reference, defendant Cowan died, and the cause proceeded against Dininny alone.

Referee's Report.

On June 13, 1890, the referee filed a report, with the following

FINDINGS OF FACT.

1. Plaintiffs are the owners of a tract of coal land in this county. Defendant is the surviving partner of a heretofore-existing copartnership consisting of F. C. Dininny and N. Cowan, and doing business under the name of Dininny & Cowan, and also under the name of the Butler Colliery Company. In August, 1879, a lease, perpetual until all the coal was taken out, for the coal under plaintiffs' tract of land, was made and entered into between plaintiffs of one part and W. W. Watkins and D. Williams, copartners, trading as Watkins & Williams, of the other part, by the terms of which Watkins & Williams were to mine the said coal and pay plaintiffs thirty cents per ton therefor. Watkins & Williams mined some coal under this lease.

Dininny & Cowan owned adjoining lands, and, in the latter part of 1881, having completed a new breaker and desiring to mine on their own account from plaintiffs' land, negotiated with Watkins & Williams and with plaintiffs for a contract for that purpose ; and, [in November, 1881, it was agreed by all parties that as to thirty acres, being part of plaintiffs' said tract of land, the coal was to be mined by Dininny & Cowan, who agreed with plaintiffs to mine at least 15,000 tons per year from said thirty acres, and pay for the same to plaintiffs at the rate of thirty cents per ton. In March, 1883, the breaker on plaintiffs' land, which was being operated by Watkins & Williams, was destroyed by fire, and Watkins and Williams ceased all operations under their lease, and both entered the employ of Dininny & Cowan. Conferences were then had between plaintiffs and Dininny & Cowan, concerning a new lease to Dininny & Cowan for the whole property. Pending the execution of a new lease, Dininny & Cowan, with the permission of the plaintiffs and of Watkins & Williams, mined coal from the whole property according to the terms of the Watkins & Williams lease, only varied in that Dininny & Cowan were to mine 20,000 tons of coal per year from the property. By the Watkins & Williams lease there was either no stipulated amount to be mined, or such stipulated amount was less than 20,000 tons per annum.] [4]

. . The new lease was never executed by the parties, but Dininny & Cowan continued to mine the coal from plaintiffs' whole tract until August, 1884, when they withdrew therefrom.

From November, 1881, until the time they ceased mining in August, 1884, as aforesaid, Dininny & Cowan sent to plaintiffs, each month, a statement purporting to show the number of tons of coal they had mined from the lands of plaintiffs, and also the number they had mined from their own lands, and payments were made upon account of coal so mined from plaintiffs' lands. The first month, a check or draft was sent by Dininny & Cowan direct to plaintiffs, payable to plaintiffs' order, but at plaintiffs' request this was changed so as to be payable to Watkins & Williams; and, thereafter, all checks or drafts were drawn payable to Watkins & Williams, but sent direct to plaintiffs, who procured the indorsement of Watkins & Williams to be placed upon such checks and drafts.

2-6. During the time said Dininny & Cowan were mining coal from plaintiffs' land, said Dininny & Cowan accounted to plaintiffs for the number of tons of coal claimed by said Dininny & Cowan to have been mined by them, at the price of thirty cents per ton, and made payments to plaintiffs upon such accounts. Dininny & Cowan mined from two veins underlying plaintiffs' land. From the upper one of these two veins, said Dininny & Cowan mined 44,611 tons of coal. From the lower one of the said two veins of coal, said Dininny & Cowan mined from the lands of plaintiffs as aforesaid 44,756 tons of coal. Dininny & Cowan mined, in all, from plaintiffs' land, 89,367 tons of coal, which, at thirty cents per ton, amounts to $26,810.10. Dininny & Cowan paid to plaintiffs on account of said coal so mined the sum of $18,323.40, leaving a balance due to plaintiffs from said Dininny & Cowan, upon September 1, 1884, of $8,486.70. The interest upon this sum to September 18, 1890, amounts to $3,080.67, making in all, principal and interest to September 18, 1890, the sum of $11,567.37. . . .

### FINDINGS OF LAW.

1. Dininny & Cowan having mined coal from plaintiffs' land between November, 1881, and August, 1884, under an agreement with plaintiffs to pay plaintiffs therefor at the rate of thirty cents per ton for the coal so mined, the number of tons so mined being 89,367, amounting at thirty cents per ton to

### Referee's Report.

$26,810.10, and said Dininny & Cowan having paid the plaintiffs on account thereof the sum of $18,323.40, plaintiffs are entitled to a judgment against F. C. Dininny, surviving partner of said Dininny & Cowan, for the sum of $8,486.70, with interest from September 1, 1884, to the date of filing this report. . . . .

### DEFENDANTS' REQUESTS FOR FINDINGS OF LAW.

1. That a perpetual lease for all the coal under a tract of land is an actual sale of the coal.

Answer: The law is found as stated in the above request.

2. That there having been a sale of the coal by Watt & Scurry to Watkins & Williams, August 28, 1879, and no surrender or re-conveyance of the estate granted, there could be no valid or binding contract made by Watt & Scurry for said coal.

Answer: The law is not found as stated in the above request; but it is found that, with the consent of Watkins & Williams, there could be a valid and binding contract made between plaintiffs and Dininny & Cowan for the coal.[3]

3. That there was no privity of contract between plaintiffs and defendants.

Answer: The law is not found as stated in this request, but it is found that there was privity of contract between plaintiffs and Dininny & Cowan.

4. That the plaintiffs cannot maintain their action.

Answer: The law is not found as stated in this request, but it is found that plaintiffs can maintain their action.[2]

5. That there can be no recovery in this case.

Answer: The law is not found as stated in this request, but it is found that there can be a recovery in this case.[1]

### JUDGMENT.

The prothonotary is directed to enter judgment in this case in favor of the plaintiffs and against F. C. Dininny, defendant, for the sum of eleven thousand five hundred sixty-seven and $\frac{37}{100}$ dollars ($11,567$\frac{37}{100}$), with interest from September 18, 1890.

—To the referee's report the defendant filed thirty-seven exceptions, specifying, inter alia, that the referee erred:

15. In the finding of fact embraced in [  ][4]

33. In his answer to the defendant's second request.

35. In his answer to the defendant's fourth request.[2]

36. In his answer to the defendant's fifth request.[1]

Said exceptions having been argued, the court, ARCHBALD, P. J., on January 5, 1891, filed an opinion in part as follows:

I have examined with care every exception taken to the report of the referee, and after due consideration have reached the conclusion that neither of them is well founded. Passing upon them in their order, I will make such brief comments as seem called for severally with regard to them. . . . . .

15. From this to the twenty-ninth exception inclusive, the findings of fact of the referee are called in question so far as they work against the defendant. It is sufficient to say with regard to these generally, that, according to the familiar rule, where there is enough evidence to sustain the referee, his findings will not be disturbed. The part of the first finding of fact which is the subject of this immediate exception is abundantly sustained by the testimony of William Watkins, Daniel Williams, L. E. Watt and Daniel Scurry. The method of payment insisted on by the plaintiffs for the coal mined upon the tract which was subject to the written lease with Watkins & Williams, is not inconsistent with the triple arrangement between Watkins & Williams, Cowan & Dininny and the plaintiffs, to which the witnesses named positively testify, and the referee is sustained in the finding by the clear weight of the evidence. I do not see how he could have well done otherwise than to find as he has. . . . . .

30, 31, 32, 33, 34, 35, 36, 37. The remaining exceptions go to the referee's conclusions of law, and to his answers to the parties' respective points. The defendant has no just cause of complaint with regard to any of these. They logically follow from the facts found and establish the liability of the defendant for the judgment which the referee has directed to be entered against him.

The exceptions to the report of the referee are overruled, and judgment is ordered to be entered against the defendant in accordance with the findings of the referee; exception.[5]

—Judgment having been entered as ordered, the defendant, F. C. Dininny, took this appeal, specifying that the court erred:

1–4. In overruling defendant's exceptions. [1 to 4]

Opinion of the Court.

5.  In entering judgment in favor of plaintiffs.[5]

*Mr. J. Alton Davis* (with him *Mr. Chas. H. Welles*), for the appellant.

That a grant of coal in place till exhaustion, is an absolute conveyance, counsel cited: Caldwell v. Fulton, 31 Pa. 475; Sanderson v. Scranton City, 105 Pa. 469; Del. etc. R. Co. v. Sanderson, 109 Pa. 583; Woodward v. Railroad Co., 121 Pa. 344. That there is no lien for unpaid purchase money after conveyance, unless expressly reserved: Hiester v. Green, 48 Pa. 96. That plaintiffs had no right of action against defendants: Shorb v. Schultz, 43 Pa. 207; Reading R. Co. v. Johnson, 7 W. & S. 317; Ramsdale v. Horton, 3 Pa. 330; Townsend v. Long, 77 Pa. 143; Justice v. Tallman, 86 Pa. 147; Kountz v. Holthouse, 85 Pa. 235; Wynn v. Wood, 97 Pa. 216; Shaaber v. Bushong, 105 Pa. 514; Stoudt v. Hine, 45 Pa. 30; Shoemaker v. King, 40 Pa. 107; Clymer v. De Young, 54 Pa. 118.

*Mr. E. N. Willard* (with him *Mr. Everett Warren*), for the appellees.

As to the promise to pay the debt of another, counsel cited: Hind v. Holdship, 2 W. 104; Adams v. Kuehn, 119 Pa. 85; Delp v. Brewing Co., 123 Pa. 42; Beers v. Robinson, 9 Pa. 229; Torrens v. Campbell, 74 Pa. 470; White v. Thielens, 106 Pa. 173; Bellas v. Fagely, 19 Pa. 273; Vincent v. Watson, 18 Pa. 96; Blymire v. Boistle, 6 W. 182. As to the ratification of an unauthorized contract: Fleckner v. Bank, 8 Wheat. 338; Bird v. Brown, 4 Exch. 798; Evans v. Mengel, 6 W. 72; McCulloch v. McKee, 16 Pa. 289; Filby v. Miller, 25 Pa. 264; Kelsey v. Bank, 69 Pa. 426.

PER CURIAM:

The findings of fact by the learned referee are fully warranted by the evidence. His conclusions of law logically follow. We find nothing to convict the court below of error.

Judgment affirmed.